A08A2083. FOUNTAIN v. UNUM LIFE INSURANCE COMPANY
OF AMERICA et al.
(677 SE2d 334)

ADAMS, Judge.

At issue is whether Walter Fountain was totally disabled for purposes of an accidental death and dismemberment policy issued by Unum Life Insurance Company of America. Fountain sued Unum Life and Unum Provident Corporation (collectively, "Unum") claiming that Unum breached the insurance contract when it refused to pay him disability benefits and that it was liable to pay bad faith penalties under OCGA § 33-4-6. The trial court granted summary judgment to Unum, and Fountain appeals. For the reasons set forth below, we affirm the trial court's grant of summary judgment to Unum on Fountain's bad faith claim. Although we disagree with Fountain's proposed construction of the policy's definition of "total disability," the trial court erred in granting summary judgment to Unum on Fountain's breach of contract claim because issues of material fact remain for the jury.

Summary judgment is proper if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). "A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." (Citation omitted.) *Staton v. State Farm Auto. Ins. Co.*, 294 Ga. App. 208 (669 SE2d 164) (2008). So viewed, the evidence shows that

Fountain was employed as a lieutenant with the Georgia Department of Corrections. On October 29, 2000, Fountain slipped on some stairs at his workplace and fell on his right hip. He immediately felt a severe pain in his back. Fountain had previously injured his back in a car accident and had surgery to fuse two discs in his spine. Approximately three months after his fall, Fountain's doctor determined that Fountain's spinal fusion had broken.

After his fall, Fountain took three days off and then returned to work. However, upon discovery of his spine condition, Fountain was placed on light duty with, according to Fountain, "heavy restrictions," which included no bending, stooping, climbing stairs, or lifting over ten pounds. As a result, he could not lift inmate's property nor could he be involved in the use of force. He began doing work such as making general rounds, writing incident reports, and assisting other supervisors with their paperwork. Some of this work was consistent with the duties of a lieutenant in the "State of Georgia Job Description" for that position, and Fountain deposed that he was able to perform at least some of the duties of his job. Nevertheless, the warden eventually informed Fountain that he could not keep Fountain on restricted duty and that he should consider retirement. Fountain's last day of work was June 11, 2002.

Fountain filed a disability benefit claim under Unum's policy. Unum denied the claim on the grounds that Fountain was not totally disabled within 180 days of the covered accident. This lawsuit followed.[1] Unum moved for summary judgment on Fountain's claims for breach of contract and for bad faith damages under OCGA § 33-4-6. The trial court initially denied but ultimately reconsidered and granted Unum's motion.

1. The Unum policy contains a permanent disability benefit payable if

> 1. the employee becomes totally disabled within 180 days of the date of the covered accident; 2. the total disability continues for a period of twelve (12) consecutive months after onset; and 3. it is shown by proper medical authority at the end of these twelve (12) months that disability is continuous and permanent.

The policy defines "total disability" and "totally disabled," for these purposes, to mean "that the employee is not able, due to injury, to

---

[1] Fountain sued Unum and the State of Georgia. The trial court dismissed Counts 3, 4, and 5 against Unum and dismissed the case against the State. This appeal involves only the trial court's grant of summary judgment to Unum on Count 1 and Count 2, for breach of contract and bad faith damages, respectively.

perform all of the material duties of his/her occupation for a period of twelve (12) continuous months."[2] At issue is the correct construction of this provision.

> When the terms of an insurance contract are clear and unambiguous, the policy terms alone determine the intent of the contracting parties. If a term is undefined in the insurance policy, we look to dictionaries to supply the commonly accepted meaning of the term. [I]f a provision of an insurance contract is susceptible of two or more constructions, even when the multiple constructions are all logical and reasonable, it is ambiguous, and the statutory rules of contract construction will be applied. The proper construction of a contract is a question of law for a court to decide.

(Citations and punctuation omitted.) *Pomerance v. Berkshire Life Ins. Co. &c.*, 288 Ga. App. 491, 493 (1) (654 SE2d 638) (2007).

Under Fountain's proposed construction of the policy, if there are some material duties of an occupation that a person cannot perform then he or she cannot perform them "all," and such a person therefore meets the definition of total disability for purposes of the policy. Unum contends that a person is not totally disabled so long as he or she has only an inability to perform some material duties; rather, to be totally disabled the inability must extend to "all," in the sense of the total sum, of his or her material duties. We conclude that Unum's interpretation is correct.

The cardinal rule of contract construction is to ascertain the parties' intent. OCGA § 13-2-3. The parties expressly intended to define "total disability" and "totally disabled," and what is sought to be defined cannot simply be severed from the defining language. "[T]he whole contract should be looked to in arriving at the construction of any part." OCGA § 13-2-2 (4). To accept Fountain's interpretation would effectively disregard the use of the words "total" and "totally" in "total disability" and "totally disabled," which show the parties' intent to define a state of whole, rather than partial, disability. Accordingly, "not able, due to injury, to perform all of the material duties of his/her occupation," means that due to injury the insured is wholly unable to perform the material duties of his or her occupation. This is consistent with "total" disability as

---

[2] The definition also provides: "After twelve (12) months, total disability means the same as Permanent Total Disability." For purposes of Unum's motion for summary judgment, Unum contended that the evidence was undisputed that Fountain was not totally disabled within the first 12 months following the accident and therefore could not recover benefits under the policy.

interpreted by the courts in other insurance contracts. "Total disability exists when one is wholly disabled from pursuing the usual and customary duties of his employment on which he must depend for a living. Total disability is the antithesis of partial disability. One is the opposite of the other." *Cato v. Aetna Life Ins. Co.*, 164 Ga. 392, 398 (138 SE 787) (1927). See also *Heist v. Dunlap & Co.*, 193 Ga. 462, 464-465 (18 SE2d 837) (1942) ("in cases of doubt as to the meaning of terms used in a private contract, it would generally be safe to assume that the parties intended to go the ordinary path") (punctuation omitted).

We nevertheless disagree with Unum that no issue of fact remains as to whether Fountain was totally disabled for purposes of the policy. Unum relies primarily on *Girardeau v. Guardian Life Ins. Co.*, 160 Ga. App. 327 (287 SE2d 324) (1981). *Girardeau* concerned a policy which insured a physician against total disability to perform his duties. The insured contended that he was disabled because following his cataract surgery he was unable to maintain a full-time practice. However, the insured admitted in his deposition that "the lenses give him adequate vision to perform his tasks and that he can perform just about any task he could perform before his surgery." Id. We found that the trial court did not err in granting summary judgment to the insurer, noting that "the insurer is not liable as for a total disability when the accident or disease has merely prevented the insured from doing as much in a day's work as before. Such lessened earning capacity may be a case of partial disability, but not a case of total disability." (Citation and punctuation omitted.) Id. at 328.

We ultimately affirmed the trial court's grant of summary judgment in *Girardeau* based on our finding that "[t]he undisputed evidence in this case shows the plaintiff is able to perform the duties of his profession." Id. In this case, however, Fountain's duties required that he, among other things, transport and handle prisoner's property in 50-pound duffel bags up to 15 times a day; bend, stoop, and squat to search for contraband; make rounds through the building, going up and down the stairs; and respond to emergency situations, such as fights between inmates, which could require the use of force. The evidence authorizes a finding that Fountain could not perform these duties after his injury, and that, although Fountain tried to continue working after his fall, he was ultimately forced to leave employment because he could not do his job.

Thus, unlike the insured in *Girardeau*, Fountain's condition did not merely preclude him from doing as much in a day; rather, there were duties of his occupation that he could not perform. Although Fountain was capable of performing some light duties following his injury, whether Fountain was wholly disabled from performing the

"material" duties of his occupation within 180 days of his injury is a question for the jury. See *Pomerance*, supra, 288 Ga. App. at 494 (1) (noting "material" is commonly defined as "having real importance or great consequences").

> Total disability, irrespective of the technical variations in the language employed, should be given a rational and practical construction. The phrase is a relative term, depending upon the circumstances and peculiar facts of each particular case, and is usually a question of fact to be determined by the court or jury trying the case.

*Prudential Ins. Co. v. South*, 179 Ga. 653, 656 (177 SE 499) (1934). See, e.g., *John Hancock Mut. Life Ins. Co. v. Poss*, 154 Ga. App. 272, 274 (267 SE2d 877) (1980) ("[t]otal disability does not mean absolute physical inability to work at one's occupation . . . but it exists if the injury or disease of the insured is such that common care and prudence required him to desist and he did in fact desist from transacting his business") (citation and punctuation omitted); *Metropolitan Life Ins. Co. v. Johnson*, 66 Ga. App. 520, 524 (18 SE2d 35) (1941) (finding of total disability to work as grocery merchant authorized where evidence included that "the plaintiff could do some of the light work in a grocery store . . . he could not do the heavy work"). It follows that the trial court erred in granting summary judgment to Unum on Fountain's claim for breach of contract.

2. Fountain contends that the trial court also erred in granting summary judgment to Unum on his claim for bad faith damages under OCGA § 33-4-6. We disagree.

"A defense going far enough to show reasonable and probable cause for making it, would vindicate the good faith of the company as effectually as would a complete defense to the action." (Citation and punctuation omitted.) *Southern Fire &c. Ins. Co. v. Northwest Ga. Bank*, 209 Ga. App. 867, 867-868 (2) (434 SE2d 729) (1993). In light of the policy language and the underlying facts, Unum had reasonable grounds to contest coverage for total disability in this case. See id. Notwithstanding Fountain's argument that Unum did not sufficiently raise the issue below, Unum moved for summary judgment on the issue of bad faith damages, presented an argument that it was correct to deny coverage based on the policy and the facts, and Fountain was afforded an opportunity to respond. Compare *Williams v. Nat. Auto Sales*, 287 Ga. App. 283, 287 (1) (651 SE2d 194) (2007). Accordingly, we affirm the grant of summary judgment to Unum on Fountain's claim for bad faith damages.

*Judgment affirmed in part and reversed in part. Smith, P. J., and Mikell, J., concur.*

DECIDED MARCH 12, 2009 —
RECONSIDERATION DENIED APRIL 10, 2009.

*Morriss, Lober & Dobson, William G. Dobson, Charles M. Cork III*, for appellant.

*Thurbert E. Baker, Attorney General, Grace E. Lewis, Assistant Attorney General, Thompson, Slagle & Hannan, Michael J. Hannan III*, for appellees.